BIBB T. PRIDDY v. KERNERSVILLE LUMBER COMPANY, INC.

(Filed 1 February 1963.)

**1. Laborers' and Materialmen's Liens § 5—**

A material furnisher must file his lien within six months after the final furnishing of the materials, and where the time for filing lien has begun to run the material furnisher cannot thereafter extend the time by furnishing small additional items not contemplated in the original contract when such items are furnished successively just prior to the expiration of the time limited solely for the purpose of keeping the lien alive. G.S. 44-39.

**2. Fraud § 2—**

Constructive fraud does not require any fraudulent intent and exists when there is a breach of legal or equitable duty which tends to deceive others or violates public or private confidence.

**3. Appeal and Error § 49—**

In a trial by the court under agreement of the parties the findings of the court are conclusive if supported by competent evidence, but when all of the evidence tends to show the facts to be otherwise than found by the court, the findings must be set aside and the cause remanded.

**4. Fraud § 2—**

The acts of the owner and material furnisher in ordering and supplying small items after completion of the contract for the sole purpose of extending the time within which the materialman might file his lien constitutes constructive fraud as to persons acquiring subsequent liens long after the expiration of the time apparently required for the filing of materialmen's liens.

**5. Execution § 13—**

The fact that the mortgagee in a deed of trust purchases the property at the execution sale foreclosing a lien for materials does not preclude the mortgagee, prior to confirmation, G.S. 1-339.67, from asserting the priority of his lien over the lien for materials when it appears that the material furnisher had fraudulently sold the owner small items for the purpose of extending the time for filing lien, and therefore had not filed lien within the time required by law.

**6. Estoppel § 4—**

The doctrine of equitable estoppel does not apply when no party has changed his position in reliance upon the acts of the party against whom the estoppel is asserted.

APPEAL by plaintiff from *Riddle, J.,* July 23, 1962 Term of FORSYTH.

This action was instituted by the holder of a deed of trust against a lienor-judgment creditor to determine the priority of their liens.

There is no substantial conflict in the evidence which is stated chronologically as follows:

On or about May 14, 1959, W. A. Davis and wife entered into an entire and indivisible contract with defendant corporation to supply all the materials required for the construction of a residence upon lot No. 1, Section 1 of "The Hammocks" in Forsyth County. There was no agreement as to the amount or cost of these materials, and defendant was to be paid when Davis sold the house. Defendant began furnishing materials on May 14, 1959 and continued to supply them regularly until November 2, 1959 on which date Davis purchased, *inter alia,* one medicine cabinet.

Before the house was finished Davis began his efforts to sell it. His first tenant, with an option to purchase, moved in before Christmas. According to Davis he actually "sold the house three different times with options." However, he "got fouled up three different times with it for some reason.'

On May 2, 1960, this tenant wanted storm doors. Davis reported his wishes to Mr. John W. Lain, President and General Manager of defendant corporation, who told him that the optionee should have the doors. Defendant supplied them at a cost of $71.00.

On October 19, 1960, Davis and wife executed a deed of trust on the property to C. B. Poindexter, trustee, to secure a loan of $8,500.00 from plaintiff due in six months with interest at the rate of six per cent. This deed of trust was duly recorded on October 19, 1960.

On October 24, 1960, the defendant delivered to Davis one set of medicine cabinet shelves at fifty cents. These shelves were a part of the medicine cabinet which was delivered on November 2, 1959 and should have come with it.

On April 24, 1961, the house was occupied by the second tenant. According to Davis, Mr. Lain telephoned him that defendant's time for filing its lien for materials furnished in constructing the house was running out, and that unless Davis made a purchase he would have "to lien the property." The tenant was interested in buying the house and Davis did not want a lien filed; so he purchased one gallon of white paint for six dollars. He told Lain that "he could probably trim the outside or use it for something." However, the paint was never used and Davis still has it. The outside trim did not need painting and paint was the only item Davis knew of that could be used later. According to Lain, when he telephoned Davis on April 24, 1961 to tell him that defendant's time for filing a lien was about up, Davis told him that he had a prospect in the house who would purchase it if Davis would paint the outside, and Lain told him that if he would come down and purchase the paint to do the work that would renew his lien.

Lain testified as follows: "On the 2nd day of November, 1959, I supplied Mr. Davis certain materials including a medicine cabinet.

Exactly 6 months to the date later on May 2, 1960, I supplied him with storm doors. Eight days lacking 6 months later I supplied him with a set of medicine cabinet shelves, the cost of $.50, and that would be October 24th, 1960. Exactly 6 months later to the day, April 24, 1961, I supplied him with a gallon of paint. . . I stayed within the law. The law protects us. I stayed within it. I knew."

On June 15, 1961, Davis and wife, executed a second deed of trust on the property to C. B. Poindexter, trustee, to secure a loan of $1,500.00 from the plaintiff due sixty days from date with interest at the rate of six per cent. This deed of trust was duly recorded on June 15, 1961.

On September 25, 1961, defendant filed a material furnisher's lien in the amount of $4,995.88 on the property. The lien stated that defendant began furnishing materials on May 14, 1959 and finished on April 24, 1961.

On December 20, 1961, defendant wrote plaintiff that his loan to Davis on the house had come to its attention; that defendant intended to institute an action to foreclose its lien in the amount of $4,995.88 plus $624.49 interest unless plaintiff would pay it off.

On February 21, 1962, defendant instituted an action to foreclose the lien. Davis and wife filed no answer and on March 28, 1962 defendant took a judgment by default final for $4,995.88 with interest from May 14, 1959. Plaintiff was not a party to this suit.

On May 25, 1962, the Sheriff offered the property for sale under execution issued on the default judgment. Plaintiff became the last and highest bidder in the amount of $6,100.00 Four days later, on May 29, 1962, plaintiff instituted this action. In his complaint, he alleged generally the facts detailed above. He averred that the house was completed on November 2, 1959 and that any subsequent supplying of materials was a fraudulent effort to defeat the liens of the plaintiff; that the purported lien was not filed in the office of the Clerk of the Superior Court within six months after the final furnishing of materials as required by G.S. 44-38 and 44-39 and that the action to enforce the purported lien was not commenced as required by law and was therefore discharged. He alleged that his deeds of trust were prior liens to the defendant's judgment and prayed for an injunction restraining the Sheriff from proceeding with the sale until the priority of the liens had been adjudicated. The defendant, by answer, denied that the plaintiff's deeds of trust had priority and alleged that plaintiff was estopped by his bid at the execution sale to deny the validity of the sale or the superiority of the defendant's lien.

When the matter came on for trial the parties waived a jury. The judge found facts in accordance with the record evidence and, in ad-

dition, upon the evidence detailed above, he found that the defendant last furnished Davis materials on April 24, 1961. He further found "that each controverted item was a bona fide purchase duly ordered and authorized by the owner; that each item was calculated to enhance the house and its salability, and that no evidence of bad faith was found on the part of the defendant but that the extension of the time of filing lien was one of the motivating factors in the ordering and furnishing of the disputed items." He concluded as a matter of law, that defendant's judgment had priority over plaintiff's deeds of trust and that the execution sale was valid. He dissolved the temporary restraining order which had been issued on June 11, 1962. Plaintiff appealed, assigning as error his Honor's findings of fact set out in the preceding paragraph and his conclusions of law based thereon.

*Fred M. Parrish, Jr., for the plaintiff appellant.*
*Frank C. Ausband & Clyde C. Randolph, Jr., for defendant appellee.*

SHARP, J. When a jury trial is waived, findings of fact by the trial judge are conclusive on appeal if there is any competent evidence to support them. *Insurance Co. v. Lambeth,* 250 N.C. 1, 108 S.E. 2d 36. Was there any evidence to support the court's finding that the defendant furnished materials to Davis until April 24, 1961, and that each contested item purchased between November 2, 1959 and April 24, 1961 was a bona fide purchase? The answer must be NO. Here the query does not seek to ascertain whether defendant actually sold Davis the questioned items; the question relates to the purpose of the sale. Did defendant sell Davis the disputed items for the purpose of fully performing its contract with him or merely for the purpose of extending the lien?

G.S. 44-39 requires the lien of a materialman to be filed within six months after the *final furnishing* of the materials. The lien is lost if the steps required to perfect it are not taken in the manner and within the time prescribed by law. *Assurance Society v. Basnight,* 234 N.C. 347, 67 S.E. 2d 390.

What is the legal test for determining when the last materials were furnished? The applicable law was stated by Brogden, J., in *Beaman v. Hotel Corporation,* 202 N.C. 418, 163 S.E. 117, in a quotation from *Breeding v. Melson,* 34 Del. 9, 143 A 23, 60 A.L.R. 1252: "There is no conflict between the authorities as to the proposition that the time for filing a claim in a mechanic's lien proceeding is computed from the date when the last item of work labor or materials is done, per-

formed or furnished, and that principle is, undoubtedly, correct. But the work performed and materials furnished must be required by the contract, and whatever is done must be done in good faith for the purpose of fully performing the obligations of such contract, *and not for the mere purpose of extending the time for filing lien proceedings."* (Italics ours)

Furthermore, in order that the date of the last item be taken as that from which limitation for filing notice of lien shall run, it is essential that the work or materials at different times be furnished *under one continuous contract.* 57 C.J.S., Mechanics Liens', p. 632. (Italics ours)

Where the time allowed for filing a lien has begun to run, the claimant cannot thereafter extend the time within which the lien may be filed by doing or furnishing small additional items for that purpose. *Apartments, Inc. v. Noland Co.,* 202 Md. 43, 95 A 2d 90, 39 A.L.R. 2d 387. *Gem State Lumber Co. v. Witty,* 37 Idaho 489 217 Pac. 1027; *Tire and Rubber Co. v. Tire and Rubber Co.,* 99 Conn. 396, 122 A 102.

The reason for the rule is clearly stated in *Cahoon et al. v. Fortune Min. & Mill. Co.,* 26 Utah 86, 72 Pac. 437:

> "To permit a contractor, long after the completion of his contract, to revive or keep alive his right of lien by tacking on and adding to his account by filling additional orders for labor or material not contemplated by his original contract, would throw open wide the doors to fraud and collusion, and in many cases defeat the very purpose and object of the statute, as it would enable the favored creditor to keep alive indefinitely his right to a lien, and at the same time prevent the property subject to lien from being reached by other lienholders whose contracts were entered into subsequent to that of his own. 'It is particularly as regards the rights of bona fide purchasers and incumbrancers that the claimants of this lien are held to the strictest compliance with the statutory provisions as to time of its enforcement. Mechanics and materialmen, it is said, should understand that any unreasonable delay in giving public notice of their intention to hold a lien is dangerous, as the public, in purchasing the property, have nothing to warn them after the building is substantially completed, and the statutory period of filing the notice of lien has expired.' "

The only conclusion to be drawn from all the evidence in this case, including the testimony of Lain, is that the items furnished after November 2, 1959 were not for the purpose of completing the house as required by any contract, but for the sole purpose of extending the time

for filing the lien which Davis and defendant both feared would discourage a sale of the property. The defendant was not a general contractor on this job. The only contract it had with Davis was to furnish the materials. There was no agreement as to amount or cost. The specifications for the house, if there were any, are not in evidence. It is obvious that the house was substantially completed before May 2, 1960 for it was then occupied by a tenant-optionee who wanted storm doors. The gallon of paint was selected as the April 24th (1961) purchase on the theory that Davis could "use it for something." It was never used.

The evidence establishes that the purpose of the disputed sales was to extend the defendant's time for filing its lien. The defendant acted under a mistake of law, but its attempts to extend the lien constituted legal or constructive fraud which may exist without any fraudulent intent.

> "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud-feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." 37 C.J.S., Frauds, Section 2 C.

Whether the materials furnished after the contract had been substantially completed were in good faith and for the purpose of completing the contract or colorably to revive the lien is a question of fact. *Sachetti v. Recreation Co.*, 304 Mich. 185, 7 N.W. 2d 265.

Had this been a jury trial plaintiff would have been entitled to a peremptory instruction. Since the plaintiff alleged fraud the burden is on him to establish it, and he is therefore not entitled to a directed verdict. 57 C.J.S., Mechanics' Liens, Section 308 K.

The findings of the trial judge to which the plaintiff excepted must be set aside and the case remanded for a new trial.

In the meantime it would appear that plaintiff, if he has not already done so, would be well advised to move below to be allowed to withdraw his bid. There is no sale prior to confirmation. G.S. 1-339.67.

In *Glass Co. v. Forbes, ante,* 426, this Court affirmed the action of the superior Court judge in permitting a bidder, who had bid too much at an execution sale on the faith of erroneous advice given him by the judgment debtor and his attorney, to withdraw his bid. *Rodman, J.,* speaking for the Court said: "Courts are as diligent in protecting purchasers from imposition because of fraud or mistake as they are in

protecting judgment debtors in similar situations. While the doctrine of caveat emptor applies to purchasers at execution sales it does not tie the hands of a court to prevent a manifest injustice not due to the fault or neglect of the purchaser."

As the defendant points out in his brief, plaintiff is in the novel position of seeking to restrain a sale at which he was the last and highest bidder. Defendant contends that plaintiff has committed himself to pay $6,100.00 for whatever interest Davis had in the property at the time it was sold, G.S. 1-339.68(b), and that the question of priority of liens has become moot. Defendant argues that if plaintiff's deeds of trust were prior to defendant's judgment, the lien of defendant's judgment attached only to Davis' equity of redemption which plaintiff bought at the Sheriff's sale and if defendant's lien had priority the result was the same.

If a third person had become the last and highest bidder at the sale, clearly plaintiff would not have been estopped to maintain the priority of his deed of trust. While the defendant's judgment is in all respects binding as between Davis and defendant, the plaintiff is not bound by it since he was not a party to it. *Thomas v. Reavis*, 196 N.C. 254, 145 S.E. 226.

The record does not disclose the value of the property. This litigation, however, is convincing proof that it is not worth the encumbrances against it. The record likewise does not disclose what prompted the plaintiff to bid $6,100.00 for the property at the execution sale four days before he brought this action to restrain the Sheriff "from proceeding with the sale."

The only logical explanation is that on the day of the sale he thought defendant's lien had been filed in time. If so, this supposition was caused by the notice of lien which defendant, the judgment creditor, had filed. Defendant may not profit from a judgment priority which it obtained by constructive fraud nor capitalize upon plaintiff's mistake occasioned by it. The doctrine of equitable estoppel, which defendant pleads, does not apply here. Defendant has not changed its position in reliance upon plaintiff's bid. *Hardware Co. v. Lewis*, 173 N.C. 290, 92 S.E. 13.

New trial.