ARTHUR G. TUGGLE AND WIFE, GERALDINE O. TUGGLE, PLAINTIFFS v. FRANK D. HAINES AND WIFE, ELIZABETH L. HAINES, DEFENDANTS AND THIRD-PARTY PLAINTIFFS v. HUGH G. NOFFSINGER, JR. AND SALLY NOFFSINGER, THIRD-PARTY DEFENDANTS

No. 755DC15

(Filed 2 July 1975)

1. Fraud § 12— representations by real estate agents — reasonableness of reliance by buyers

Evidence that defendants, an 80 year old man and his 68 year old wife, agreed to purchase a house upon representations by third-party defendant realtors that they could assume both the 6% VA loan and the owners' existing credit life insurance and that there was no penalty for prepayment of the mortgage, but that the loan was actually a 6½% FHA loan with a prepayment penalty and there was no credit life insurance which they could assume *is held* not to disclose as a matter of law that defendants did not reasonably rely upon the representations and to present a question for the jury on the issue of fraud.

2. Damages § 11; Fraud § 13— punitive damages

The right to an award of punitive damages, assessed for the purpose of punishing the wrongdoer, does not follow as a conclusion of law because the jury has found the issue of fraud against a defend-

ant, but there must be an element of aggravation accompanying the tortious conduct which causes the injury.

3. **Damages § 11; Fraud § 13— fraudulent representations — no punitive damages**

There was no evidence of such insult, indignity, malice, oppression or other conduct to justify an award of punitive damages against third-party defendant realtors where the evidence showed that they falsely represented to prospective purchasers of a house that there was no penalty for prepayment of the existing mortgage and that they could assume the sellers' existing credit life insurance to cover the mortgage.

4. **Brokers and Factors § 6— real estate agents' commission — defaulting buyers — fraud by agents**

Real estate agents were not entitled to recover their lost commission from the defaulting buyers of a house where the sales contract between the sellers and buyers contained no provision concerning payment of the real estate agents' commission; furthermore, the agents' right to recover the lost commission from the defaulting buyers would be barred by the jury's finding of fraud by the agents in the sale of the house.

APPEAL by third-party defendants from *Barefoot, Judge.* Judgment entered 13 August 1974 in District Court, NEW HANOVER County. Heard in the Court of Appeals 17 March 1975.

Plaintiffs, the Tuggles, brought this action against the Haineses, original defendants, to recover $3,050.00 damages which plaintiffs alleged resulted from the Haineses' breach of a contract to purchase the Tuggles' house. Defendants answered, alleging they were fraudulently induced to enter the contract by misrepresentations made by Hugh G. Noffsinger, Jr. and Sally Noffsinger, acting as agents of the plaintiffs. In a counterclaim and third-party complaint the Haineses asserted a claim against plaintiffs and against the Noffsingers to recover $1,250.00 previously paid by them, $1,000.00 of which was a deposit on the house and $250.00 of which was for the purchase price of a refrigerator. The Haineses further sought $10,000.00 as punitive damages against the Tuggles and the Noffsingers.

Plaintiffs replied, admitting they had refused to return the earnest money paid them by the Haineses, but otherwise denying material allegations of the counterclaim. The Noffsingers, third-party defendants, also answered the third-party complaint and denied the material allegations therein. In addition, the Noffsingers asserted a counterclaim against the Haineses to recover $2,400.00, the amount of the commission for sale of the Tuggles' house which the Noffsingers alleged was denied them by the Haineses' action in breaching their contract.

Tuggle v. Haines

At trial, plaintiffs' evidence tended to show: On 6 March 1972 the Haineses came to the real estate office of the Noff-singers, partners engaged in business in Wilmington, N. C., to inquire about the availability of houses for sale in that area. They talked with Hugh G. Noffsinger, Jr., who took them to inspect a house for sale by the Tuggles. The Haineses examined the interior of the house for approximately two hours but at that time declined to buy it. On the following day Mrs. Haines, in a long-distance phone call to Noffsinger, informed him they would purchase the Tuggle house for the sum of $40,000.00, and agreed with Noffsinger that if he would sign the sales contract for the Haineses, they would later countersign the contract. Noffsinger complied with this request, sent the signed contract, and received it back after it was countersigned by the Haineses. As agreed, the Haineses also sent Noffsinger $1,000.00 as a deposit. In addition, the Haineses sent Noffsinger two checks totaling $250.00 for the purchase of a refrigerator offered for sale by the Tuggles. By letter dated 10 April 1972 Frank Haines informed Noffsinger that the Haineses had decided to "release" the house. The value of the Tuggles' house on 6 March 1972 was $40,000.00. The house was sold to other parties in June for the sum of $37,000.00.

The Haineses' evidence tended to show: Hugh Noffsinger, Jr. prevailed upon them to see the Tuggles' house although the Haineses thought it was too expensive. After their initial in-spection, which consisted merely of walking through the house, Noffsinger told the Haineses that as purchasers, they could assume both the six percent VA loan and the Tuggles' existing credit life insurance to cover the mortgage on the house and that there was no penalty for prepayment of the mortgage. The Haineses decided to purchase the Tuggles' house in reliance upon obtaining this life insurance, a feature that was par-ticularly attractive to them since Mr. Haines's age was 80 and his wife's was 68. In addition to sending Noffsinger the counter-signed contract and a deposit of $1,000.00, they sent him two checks, the first in the amount of $200.00 payable to him and the second in the amount of $50.00 payable to Mr. Tuggle, both as payment for the Tuggles' refrigerator. Visiting Wilmington in April 1972, the Haineses learned from the mortgagee of the Tuggle property that the loan was an "FHA loan" at an interest rate of six and one-half percent, with a penalty for prepaying the mortgage, and that there was no credit life insurance which

they could assume. If they had known the truth about this loan, they never would have considered the house.

Hugh G. Hoffsinger, Jr., testified that he discussed the Tuggle house with the Haineses on 6 March 1972 and gave them a copy of "Wilmington Multiple Listing Service—Listing No. 11-71-742" sheet which described certain facts about the Tuggle property, including the facts that the price of the house and lot was $40,000.00 VA," and the balance remaining on the loan held by "Cameron Brown" was "$23,800 at 6% interest." Near the bottom of this sheet was this statement: "This information is believed to be correct but subject to verification." Hugh Noffsinger testified that he did not inform the Haineses that there was "credit life insurance" on the Tuggles' loan which could be transferred.

At the close of the Noffsingers' evidence, the trial court granted the Haineses' motion for directed verdict against the Noffsingers' counterclaim for recovery of a commission on the sale of the Tuggle house.

The jury found that the plaintiffs, through their agents, the Noffsingers, procured the contract with the Haineses through fraud, and awarded the Haineses actual damages in the amount of $1,250.00 jointly against the Tuggles and the Noffsingers and punitive damages in the amount of $2,700.00 against the Noffsingers. The Noffsingers appealed.

*Marshall, Williams, Gorham & Brawley by Lonnie B. Williams for third-party plaintiff appellees.*

*L. Gleason Allen; and Crossley & Johnson by Robert W. Johnson for third-party defendant appellants.*

PARKER, Judge.

[1] Appellants Noffsinger assign error to denial of their motion for directed verdict in their favor on the issue of fraud, contending that the Haineses' own testimony shows that the Haineses unreasonably relied upon statements allegedly made by Hugh Noffsinger concerning the existence of credit life insurance in connection with the outstanding mortgage loan on the Tuggles' house and the possibility that such life insurance could be transferred to the Haineses upon their assumption of the mortgage debt. In particular, appellants point to those portions of the testimony given by Mr. and Mrs. Haines in which they

admitted that they had expressed some skepticism as to whether Mr. Haines, a man 80 years old, could obtain life insurance at the same rates as Mr. Tuggle, a much younger man. There was a conflict in the evidence as to whether Noffsinger had made any representations concerning credit life insurance. However, whether any representations concerning the credit life insurance were in fact made by Noffsinger and, if made, whether the Haineses reasonably relied upon such statements, were questions for the jury to resolve. The testimony of the Haineses was sufficient to support a jury finding that the representations were made and we cannot say, as a matter of law, that the Haineses did not reasonably rely upon them. *Johnson v. Owens,* 263 N.C. 754, 140 S.E. 2d 311 (1965). Moreover, the representations concerning the credit life insurance were not the only allegedly false representations upon which the Haineses relied, and their testimony concerning such other representations was sufficient to support a jury finding in their favor on the issue of fraud. There was no error in denying appellants' motion for a directed verdict on the issue of fraud.

**[2, 3]**   There was error, however, in submitting the issue as to punitive damages. The right to an award of punitive damages, assessed for the purpose of punishing the wrongdoer, does not follow as a conclusion of law because the jury has found the issue of fraud against a defendant. "There must be an element of aggravation accompanying the tortious conduct which causes the injury. Smart money may not be included in the assessment of damages as a matter of course simply because of an actionable wrong, but only when there are some features of aggravation, as when the wrong is done willfully or under circumstances of rudeness, oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." *Swinton v. Realty Co.,* 236 N.C. 723, 725, 73 S.E. 2d 785, 787 (1953). Here, taking all of the Haineses' evidence as true, the record is void of evidence of such insult, indignity, malice, oppression, or other conduct on the part of the Noffsingers as to justify an award of punitive damages against them. Indeed, there was no evidence that Mrs. Noffsinger had any contacts with the Haineses prior to the time the Haineses countersigned the contract to purchase the Tuggles' house. The facts upon which the Haineses rely to recover punitive damages are the same facts upon which they rely in their action for fraud. Therefore, on this record we find that the Haineses were not entitled to an award of punitive damages.

[4] There was no error in allowing the Haineses' motion for a directed verdict in their favor as to the Noffsingers' counter-claim for lost real estate agent's commission. *Chipley v. Morrell,* 228 N.C. 240, 45 S.E. 2d 129 (1947), relied on by appellants, is distinguishable. In that case, the contract between the seller and the buyer included an express provision for a real estate broker's commission to be paid by the seller when the sale was closed. The buyer defaulted on the contract. In a suit by the broker to recover the commission, the trial court sustained the defaulting buyer's demurrer to the complaint. On appeal our Supreme Court reversed, holding that although the broker was not a party to the contract between seller and buyer, the broker was a beneficiary thereof to the extent of the commission and as a third-party beneficiary could maintain the action against the defaulting buyer. *See generally* Annot., 30 A.L.R. 3d 1395 (1970). In the present case, the sales contract between the Tuggles and the Haineses made no mention of a commission, provision for payment of a commission being included only in a separate "Exclusive Listing Contract" entered into between the Tuggles and Noffsinger, Realtors, to which contract the Haineses were not a party. Furthermore, the jury's answer to the fraud issue in the present case would in any event bar the Noffsingers' right to maintain an action for lost commission against the Haineses. *See* Annot., 9 A.L.R. 2d 504 (1950).

We have examined appellant's remaining assignments of error and find no error such as to warrant the granting of another trial. The charge of the court to the jury, when con-sidered contextually and as a whole, was free from prejudicial error.

For the reasons hereinabove set forth, that part of the judgment appealed from which allows a recovery of punitive damages against the appellants is reversed, and that part of the judgment which awards to the Haineses recovery of actual dam-ages in the amount of $1,250.00 against the Tuggles and the Noffsingers jointly is affirmed.

Reversed in part.

Affirmed in part.

Chief Judge BROCK and Judge ARNOLD concur.