Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission MODIFIES the subject opinion (particularly, Findings of Fact 1, 2, 7 and 14, and the Conclusions of Law), and AFFIRMS the Deputy Commissioner.
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant Tim Markham, doing business as Markham and Associates (hereinafter referred to as "Markham").
3. On 11 December 1992 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant Markham.
* * * * * * * * * * * * *
Based upon the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff is a 33-year-old carpenter who sustained serious injury on 11 December 1992 when he fell from a second story scaffold while employed by defendant Markham working at a Sunstar Homes jobsite. As a result of injuries to his back and heel sustained in this accident, plaintiff was totally disabled from the date of the injury through September 2, 1993, has required hospitalization at Wake Medical Center, treatment rendered by Dr. Leonard Nelson, physical therapy as prescribed by Dr. Nelson, and would benefit from intensive physical therapy at Cape Fear Valley Medical Center and/or surgery as recommended by Dr. Nelson. On the date of the injury, plaintiff earned an average weekly wage of $300.00 in the subject employment, rendering a compensation rate of $200.00 per week. Markham had ten employees on the date of injury.
2. Defendant Markham represented to plaintiff that Markham carried workers' compensation insurance to cover plaintiff. Defendant Markham deducted ten percent of plaintiff's pay to help cover his workers' compensation premium, in violation of N.C.G.S. § 97-21.
3. Defendant Sunstar Homes is a general contractor and was engaged in building homes in the Village Lakes subdivision during the latter part of 1992.
4. On 13 September 1992, Markham entered into a contract with Sunstar Homes to perform work as a framing subcontractor. In that contract Markham agreed to furnish Sunstar certificates of insurance covering workers' compensation and general liability. Markham also signed a contract addendum entitled "Subcontractor Acknowledgment", which provided in relevant part that (1) all subcontractors working for Sunstar Homes must be covered by workers' compensation and general liability insurance; (2) those subcontractors who carry this insurance must provide a certificate of insurance listing Sunstar Homes as the certificate holder; and (3) if a certificate of insurance listing Sunstar Homes is not provided, a percentage of the subcontractor's pay would be withheld to cover workers' compensation through Sunstar Homes' coverage.
5. Sunstar Homes is self-insured with the North Carolina Home Builders Self-Insurers' Fund (hereinafter "Home Builders") with Consolidated Administrators as its servicing agent.
6. In September 1992 Markham, was self-insured through Home Builders, with Consolidated Administrators as the servicing agent. Each month Consolidated Administrators would send Markham a form on which he was to calculate the premium owed for that month and return it to Consolidated Administrators with a check for the amount due. September's premium was due October 1st, October's premium due November 1st, etc. On two occasions prior to November 1992, Markham's coverage through the self-insurer's fund was terminated for non-payment of premiums, but then reinstated after payment of a fee by separate check, and by paying the premiums and completing the paperwork up to date.
7. The Vardell Godwin Insurance Agency (Godwin Agency) was a field representative for North Carolina Home Builders Self-Insurance Fund. Randall Curtis Godwin was employed by Vardell Godwin as an insurance agent. As a field representative, Godwin did not have authority to bind coverage. However, the Godwin Agency was an agent of Home Builders for the purpose of issuing certificates of insurance which would reflect coverage by Home Builders. The field service agreement required that the Godwin Agency furnish Consolidated Administrators with a copy of every certificate of insurance it issued. This was to enable Consolidated Administrators to notify the certificate holder if coverage was canceled before expiration of the policy term. Without a copy, Consolidated Administrators had no way of knowing who to notify, other than the insured, in the event of cancellation. The certificate, on its face, disclaims any duty or promise to give its "holder" (addressee) actual notice, although it states the issuer will "endeavor" to do so. Neither plaintiff nor Sunstar was intended by either the Godwin Agency or Home Builders to be a third party beneficiary of their agreement.
8. Sunstar Homes keeps all certificates of insurance for subcontractors in a notebook, and enters dates of coverage on a computer. When a subcontractor's coverage reaches the expiration date, Ms. Trimmer, accounting assistant with Sunstar Homes, will contact the agent directly to verify continuing coverage. If Sunstar Homes received notice of cancellation before expiration of the policy period, the notice will be stapled to the certificate of insurance in the notebook and Sunstar will commence deducting from the subcontractor's payments to cover workers' compensation for the subcontractor through Sunstar Homes.
9. When Markham began working for Sunstar Homes as a subcontractor in September 1992, Godwin sent Sunstar Homes a certificate of insurance indicating coverage for Markham through North Carolina Builders Trust from 1 April 1992 to 1 April 1993. Godwin did not send a copy of this certificate to Consolidated Administrators. Thereafter, Consolidated Administrators did not become aware that a certificate had been issued to Sunstar Homes for Markham until after coverage had been canceled and after the injury giving rise to this claim. Based on the evaluation of the hearing Deputy and the lack of supporting documentation, the undersigned find that Godwin's office did not in fact send Sunstar Homes notice of cancellation prior to the injury.
10. On 4 November 1992, Consolidated Administrators sent Markham a third cancellation notice, indicating that his workers' compensation coverage would be terminated 3 December 1992 for nonpayment of the September 1992 premium. At that point, Markham also owed the premium for October 1992. This notice of cancellation was sent certified mail to the same address where all previous notices had been sent (and received), and was delivered and signed for. While the signature on the return receipt is illegible, based on the evaluation of the hearing Deputy, the undersigned does not accept as credible Markham's testimony that he did not receive the notice of cancellation.
11. This third notice of cancellation indicated that all premiums must be paid up to date and that a $100.00 fee must be paid by separate check in order to reinstate coverage. Markham sent in the premiums for September and October on November 1st, but did not send in an additional $100.00. Therefore, Markham's self-insured coverage through Home Builders terminated on 3 December 1992, and as of that date Markham became a non-insured employer. He did not send in November's premium by 3 December 1992.
12. Markham did not tell his employees or Sunstar Homes that he was non-insured, and did not take steps to secure other coverage before plaintiff's injury on 11 December 1992. Markham continued to deduct from plaintiff's paycheck allegedly to pay for workers' compensation insurance through the date of the accident, and continued to represent to plaintiff that coverage was in force even after plaintiff was hospitalized for the injury.
13. Sunstar Homes did not have notice of the cancellation and therefore did not start deducting a percentage of Markham's pay to cover the sub-contractor's employees. Sunstar Homes relied in good faith on the certificate of insurance issued by the Godwin Agency for Markham, and did not have actual knowledge of the cancellation of coverage prior to the injury.
14. Home Builders and Sunstar were motivated to give and receive notice of cancellation of Markham's coverage, and to arrange other coverage, in order to avoid the litigation that otherwise frequently follows serious injuries to non-insured employees, to maintain the good will of employees, and, in Home Builders' case, to obtain additional premiums. There is no evidence that Markham was without insurance as a result of an intentional scheme to evade the coverage requirements of the Act.
15. Mark Gerrard, Sunstar Homes' superintendent at the Village Lakes site, never had any discussions with Markham prior to the injury about Sunstar Homes picking up coverage for Markham because Sunstar Homes had received notice of cancellation of Markham's coverage. Based on the evaluation of the hearing Deputy, Markham's testimony to the contrary is not accepted as credible, and, in fact, after the first hearing in September of 1993 in this matter, Markham asked Gerrard that same day at a job site to testify that Sunstar Homes had notice when in fact it did not, and had asked that he write a letter to that effect the prior December or January.
16. Plaintiff had no knowledge of the cancellation of Markham's coverage and had no knowledge of any facts surrounding the issuance or validity of the certificate of insurance. Consolidated Administrators had no knowledge that Markham was deducting from his employees' pay to pay the premiums.
17. Sunstar Homes complied with N.C.G.S. § 97-19 by obtaining a certificate of insurance, at the time of subletting its contract to Markham, showing that Markham had complied with the coverage requirements of N.C.G.S. § 97-93, and thereafter in good faith relied on its purported validity in the absence of notice of cancellation prior to the expiration of the policy period.
18. There was proper cancellation by Consolidated Administrators of Markham's coverage through North Carolina Home Builders, and therefore Markham was non-insured on the date of injury. N.C.G.S. § 97-99.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant Markham was subject to the Workers' Compensation Act, and plaintiff is entitled to compensation from the non-insured defendant Markham due to plaintiff's injury of 11 December 1992. N.C.G.S. §§97-2 (1) and 97-95.
2. Sunstar Homes is not liable for compensation due plaintiff for injuries sustained while in the employ of its subcontractor. N.C.G.S. § 97-19.
3. Home Builders did not breach a legal duty to give notice of cancellation to any third person. N.C.G.S. § 97-19 and 97-99. Plaintiff was not a third party beneficiary of the Godwin Agency's contract with Home Builders. Lane v. Aetna Casualty Surety Co.,48 N.C. App. 634, 638-39, 269 S.E.2d 711 (1980); Tuggle v.Haines, 26 N.C. App. 365, 370, 216 S.E.2d 460 (1975); and HobsonConstruction Company, Inc. v. Holiday Inns, Inc., 14 N.C. App. 475,477-78, 188 S.E.2d 617 (1972). Otherwise, and contrary to the express terms of the certificate, the law would punish the insurer for voluntarily attempting to arrange for notice of cancellation to the principal contractor, and discourage such voluntary efforts, contrary to the policy of N.C.G.S. § 97-19 to facilitate coverage of subcontractors and their employees. Plaintiff is not entitled to compensation from defendant Home Builders.
4. On the date of the injury, plaintiff was earning an average weekly wage of $300.00 per week, rendering a compensation rate of $200.00 per week. N.C.G.S. § 97-2 (5).
5. Plaintiff is entitled to temporary total compensation as a result of his injury by accident at the rate of $200.00 per week from 11 December 1992 through the date of the hearing and until he regains the capacity to earn wages. N.C.G.S. § 97-29.
6. Plaintiff is entitled to have paid by defendant Markham all medical compensation expenses incurred or to be incurred as a result of his injury by accident, including hospitalization at Wake Medical Center, treatment rendered by Dr. Leonard Nelson, physical therapy as prescribed by Dr. Nelson, and intensive physical therapy at Cape Fear Valley Medical Center and/or surgery as recommended by Dr. Nelson, so long as such treatment effects a cure, gives plaintiff relief or shortens the period of disability. N.C.G.S. §§ 97-25 and 97-2 (19); Hyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993).
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant Markham shall pay temporary total disability benefits to plaintiff at the rate of $200.00 per week covering the period 11 December 1992 through the date of the hearing and until plaintiff regains the capacity to earn wages, subject to the attorney fee hereinafter approved.
2. A reasonable attorney fee equal to 25% of compensation due and hereafter due and actually paid for plaintiff shall be paid by said defendant directly to plaintiff's counsel.
3. Defendant Markham shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident, including the hospitalization at Wake Medical Center, treatment rendered by Dr. Leonard Nelson, physical therapy as prescribed by Dr. Nelson, and intensive physical therapy at Cape Fear Valley Medical Center and/or surgery as recommended by Dr. Nelson, when bills for the same shall have been submitted to and approved by the Commission.
4. Each party shall bear its own costs.
 S/ _________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN CHAIRMAN
S/ _________________ RICHARD B. FORD DEPUTY COMMISSIONER
2/15/95 JRW/jss