BLALOCK ELECTRIC CO. v. GRASSY CREEK DEVELOPMENT CORP.

[99 N.C. App. 440 (1990)]

---

BLALOCK ELECTRIC CO., INC., Plaintiff v. GRASSY CREEK DEVELOPMENT CORPORATION, Defendant

No. 8924DC730

(Filed 17 July 1990)

1. **Laborers' and Materialmen's Liens § 6 (NCI3d)— finding that additional work was done—no bearing on conclusion as to date of last furnishing of services**

In an action to recover on a materialman's lien, any error of the trial court in finding that plaintiff's employees did additional trim work in a condominium from May to August 1987 would not affect the trial court's conclusion that 3 February 1988 was the date of the last furnishing of services under the contract for the purpose of determining whether plaintiff's lien was timely filed.

**Am Jur 2d, Mechanics' Liens §§ 192, 202.**

BLALOCK ELECTRIC CO. v. GRASSY CREEK DEVELOPMENT CORP.

[99 N.C. App. 440 (1990)]

2. **Laborers' and Materialmen's Liens § 6 (NCI3d)— findings as to date of last furnishing of services—services not trivial—services performed in furtherance of contract—sufficiency of evidence**

Evidence was sufficient to support the trial court's findings that three of plaintiff's employees and an employee of a supplier installed an exhaust fan and intercom/security system on 3 February 1988, that these services were not trivial in nature, and that they were performed in furtherance of the original contractual obligation where all four employees testified that they had performed the work on the indicated date and two of them submitted time sheets verifying this fact; the employees' testimony showed that the installations of the equipment were major undertakings requiring the four employees to work 5½ hours and requiring cutting through a block wall; and defendant's president admitted that the exhaust fan was specifically required by the blueprints and admitted that he had requested the installation of the intercom system.

Am Jur 2d, Mechanics' Liens §§ 192, 202.

3. **Laborers' and Materialmen's Liens § 6 (NCI3d)— timeliness of filing of lien**

Where defendant did not challenge on appeal the trial court's findings that plaintiff filed its materialman's lien 118 days after the last furnishing of materials and labor and filed its action to enforce its lien 175 days after the last furnishing, those findings were binding on appeal, and the court properly concluded that plaintiff's lien was timely filed.

Am Jur 2d, Mechanics' Liens §§ 192, 202.

4. **Laborers' and Materialmen's Liens § 6 (NCI3d)— work done in furtherance of original contract—sufficiency of evidence**

In an action to recover on a materialman's lien the evidence was sufficient to support the trial court's conclusion that work done on 3 February 1988 was in furtherance of the original contract, and there was no indication that the work was done for the purpose of extending the time for filing the lien.

Am Jur 2d, Mechanics' Liens §§ 192, 202.

BLALOCK ELECTRIC CO. v. GRASSY CREEK DEVELOPMENT CORP.

[99 N.C. App. 440 (1990)]

APPEAL by defendant from judgment entered 21 March 1989 by *Judge Alexander Lyerly* in MITCHELL County District Court. Heard in the Court of Appeals 7 December 1989.

This action was brought by plaintiff to enforce a materialman's lien pursuant to G.S. 44A-7 *et seq.* and was tried before a judge, sitting without a jury. The evidence adduced at trial showed the following facts. In the summer of 1985 defendant corporation, by and through its President Edward L. Bryant, entered into an oral contract with Lewie M. Blalock, president of plaintiff corporation, whereby plaintiff was to provide electrical wiring and electrical service to condominiums to be constructed on land owned by defendant and located in Spruce Pine, North Carolina, for the approximate sum of $14,000.00 per building, payable upon the completion of each building. In July 1985 plaintiff first furnished labor and electrical supplies to defendant's property by beginning the "rough-in" work on Condominium No. One, a building consisting of four condominium units. Plaintiff was paid $7,000.00 upon completion of the electrical "rough-in" and was paid $7,040.48 on 3 December 1985 after completion of the trim work for a total of $14,040.48 for labor, materials and supplies furnished to Condominium No. One.

In the early part of 1986 Blalock and Bryant discussed the remainder of plaintiff's contract as it related to Condominium No. Two, a building also containing four condominium units, and agreed that the contract price would be approximately $14,000.00 assuming the wiring needs were the same as for Condominium No. One. On 1 March 1986 plaintiff began "rough-in" work on Condominium No. Two and discovered that the floor construction of that building differed from No. One, requiring additional labor and materials. On 1 April 1986 plaintiff's work passed the Rough-In Electrical Inspection conducted by the Mitchell County Department of Inspections (herein "the Department"). On 6 April 1986, defendant paid plaintiff $7,000.00 as a draw against the contract price for Condominium No. Two. In late May or early June 1986 plaintiff supplied labor and materials to provide electrical service to the elevator in No. Two. Plaintiff's work passed the 16 June 1986 Electrical Service Inspection and the 6 August 1986 Power for Elevator Inspection which were also conducted by the Department. From approximately July or August 1986 until May 1987 no construction work was done on Condominium No. Two because defendant was without funds to proceed with construction. In early May 1987 there was a potential sale for one unit in Condominium No. Two

and plaintiff installed light fixtures and completed the trim work in that unit. On 27 May 1987 plaintiff's work in No. Two passed the final Electrical Service Inspection, but the inspector testified that additional trim work, including the installation of receptacle cover plates, remained to be completed.

In the early summer of 1987 plaintiff ordered an intercom/security system for installation at No. Two from a local supply house, Mountain Heritage Lighting and Electric Supply of Newland, North Carolina (herein "Mountain Heritage"). Although the system was not part of the blueprints, it had been added to Condominium No. One at the request of E. L. Bryant, and Bryant and Blalock had agreed it would also be installed in Condominium No. Two. From May to August 1987 plaintiff provided additional labor and materials to complete the trim work in the remaining three units in No. Two, but was unable to complete the electrical work pursuant to the contract because the intercom/security system had not been delivered to Mountain Heritage. On 20 January 1988 one of plaintiff's employees spent two and one-half hours at Mountain Heritage helping their employees look for the "master unit" for the intercom system which supposedly had been misplaced. The unit was never found and had to be reordered. On 3 February 1988 Blalock and two other of plaintiff's employees picked up the unit from Mountain Heritage and, along with an employee from Mountain Heritage, went to Condominium No. Two to install it. While they were there they also installed an exhaust fan in the elevator room, which required cutting into block walls. This exhaust fan was specified in the blueprints and a similar fan had been installed in Condominium No. One. The four men worked for five and one-half hours installing these systems to complete the work specified by the contract between the parties.

On 4 February 1988 Blalock presented the final bill to E. L. Bryant who informed Blalock that because defendant corporation had been unable to sell the condominium units there were no funds with which to pay the remaining $8,288.28. E. L. Bryant suggested that Blalock contact H. G. Bryant, a director of defendant corporation, regarding payment of the outstanding balance. Blalock contacted H. G. Bryant who responded by letter to Blalock on 1 April 1988 assuring Blalock he would be paid as soon as a condominium was sold and requesting that plaintiff corporation not file a lien against the property. On 31 May 1988, 118 days after the 3 February 1988 furnishing of materials and labor to defendant's condominiums,

plaintiff filed a Notice of Claim of Lien against defendant corporation in the Mitchell County Office of the Clerk of Court pursuant to Chapter 44A of the North Carolina General Statutes. On 27 July 1988 plaintiff brought this action to enforce its lien and defendant's registered agent, E. L. Bryant, was served with notice of both the lien and the judicial action.

Based on this evidence the court made appropriate findings of fact and concluded that the "last furnishing of materials and labor," within the meaning of the statute, occurred on 3 February 1988. The court also concluded that plaintiff had filed its lien and brought the action to enforce its lien in timely fashion in accordance with G.S. 44A-12 and 44A-13. Based on these conclusions, the court ordered that the property be sold to satisfy the lien in accordance with the provisions of G.S. 44A-14. From this judgment defendant appeals.

*Hemphill & Gavenus, by Kathryn G. Hemphill, for plaintiff-appellee.*

*Hal G. Harrison, P.A., by Hal G. Harrison, for defendant-appellant.*

PARKER, Judge.

Defendant brings forward seven assignments of error on appeal. First, defendant contends that the court erred in finding that from May to August 1987 plaintiff's employees did additional trim work in Condominium No. Two because there was insufficient evidence to support such a finding. Second, defendant asserts that the court erred in finding that three of plaintiff's employees and an employee of Mountain Heritage installed the exhaust fan and intercom/security system at Condominium No. Two on 3 February 1988. Third, defendant contends that the court erred in finding that the labor and materials supplied by plaintiff on 3 February 1988 were not trivial in nature and were performed in furtherance of the original contractual obligation. Fourth, defendant argues that the trial court's findings of fact did not support its conclusion that plaintiff timely filed its claim of lien against defendant in accordance with G.S. 44A-12. Fifth, defendant asserts that the court's findings did not support its conclusion that the labor and materials furnished by plaintiff on 3 February 1988 were not trivial and were furnished in furtherance of the original contractual obligation. Next, defendant contends that the court's findings did not support

its conclusion that the property should be sold in accordance with the provisions of G.S. 44A-14. Finally, defendant argues that the court erred in ordering that the judgment should be a lien on the property as of 19 July 1985 because there were insufficient findings of fact and conclusions of law to support such order. We find no merit in defendant's arguments; therefore, we affirm.

Defendant's first three assignments of error are directed to specific facts found by the trial court. Defendant contends that the evidence presented at the trial does not support these findings. Where the trial court sits without a jury, the judge is required to "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." G.S. 1A-1, Rule 52(a)(1). The findings of fact are binding if supported by competent evidence, even if there is evidence to the contrary. *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984).

[1] Our review of the trial transcript reveals competent evidence supporting these findings. With regard to the additional trim work performed by plaintiff's employees in Condominium No. Two, Blalock testified on cross-examination that after working on the unit for which there was a potential sale in May or June 1987 there were several occasions where they came to the condominium to "see if the other units were ready to finish trimming out and where they had been painted or whatever, we would go ahead and put covers on or hang fixtures in that order." This testimony shows that work was done on the second building after May 1987. In any event, this finding does not affect the court's conclusion that 3 February 1988 was the date of the last furnishing of services under the contract for the purpose of determining whether plaintiff's lien was timely filed; therefore, any error with regard to this finding would not affect the court's judgment where other findings supported by competent evidence would be sufficient to support the judgment. *Wachovia Bank v. Bounous*, 53 N.C. App. 700, 281 S.E.2d 712 (1981).

[2] As to the finding that plaintiff's employees and an employee of Mountain Heritage installed the intercom and elevator room exhaust fan on 3 February 1988, all four employees testified that they had performed the work on that date and two of the employees submitted time sheets verifying this fact. Finally, the employees' testimony shows that the installation of the intercom and the exhaust fan were major undertakings requiring the four employees

to work five and one-half hours and, in the case of the exhaust fan, requiring cutting through a block wall. As to the finding that this work was performed in furtherance of the contractual obligation, E. L. Bryant admitted that the exhaust fan was specifically required by the blueprints and also admitted that he had requested the installation of the intercom system for both buildings. Therefore, we find no merit in defendant's assertions.

[3] By its fourth, fifth, and sixth assignments of error defendant challenges the court's conclusions that plaintiff's lien was timely filed, that the work performed on 3 February was in furtherance of the contractual obligation, and that the property to which the materialman's lien attached should be sold. The trial court found as fact that plaintiff had filed its lien 118 days after the last furnishing of materials and labor to the real property and had filed the action to enforce its lien 175 days after the last furnishing. Defendant has not challenged these findings in its assignments of error and, therefore, they are binding on appeal. *See Industries, Inc. v. Construction Co.*, 29 N.C. App. 270, 275, 224 S.E.2d 266, 269, *disc. rev. denied*, 290 N.C. 551, 226 S.E.2d 509 (1976). In order to be timely, a materialman's lien must be filed no later than "120 days after the last furnishing of labor or materials at the site of the improvement by the person claiming the lien." G.S. 44A-12(b). An action to enforce the lien must be brought no later than 180 days after the last furnishing of labor or materials. G.S. 44A-13(a). Based on these findings, therefore, the trial court's conclusion was correct.

[4] Defendant also argues that the court's conclusion that the work done on 3 February 1988 was in furtherance of the original contract conflicts with our Supreme Court's decision in *Priddy v. Lumber Co.*, 258 N.C. 653, 129 S.E.2d 256 (1963). We disagree. *Priddy* was an action between the holder of a deed of trust and a lienor-judgment creditor to determine the priority of their liens. In that action the plaintiff, the holder of the deed of trust, alleged that the construction was completed on 2 November 1959 and that any subsequent supplying of materials by defendant, the Lumber Company, was a fraudulent effort to defeat plaintiff's liens. *Priddy*, 258 N.C. at 655, 129 S.E.2d at 259. In *Priddy*, the uncontradicted facts showed that on 14 May 1959 the party building the house entered into a contract with defendant to supply all the materials required for construction. Defendant supplied materials regularly until 2 November 1959. On 2 May 1960 defendant delivered storm

BLALOCK ELECTRIC CO. v. GRASSY CREEK DEVELOPMENT CORP.

[99 N.C. App. 440 (1990)]

doors costing $71.00. The builder executed a deed of trust 19 October 1960 to secure a loan from plaintiff. On 24 October 1960 defendant delivered one set of medicine cabinet shelves worth fifty cents, which shelves were part of a medicine cabinet delivered on 2 November 1959 and which should have come with the cabinet. On 24 April 1961 defendant's president informed the builder that unless he purchased something else defendant would have to place a lien on his property. The builder purchased a gallon of paint on that date. On 15 June 1961, the builder executed a second deed of trust to secure an additional loan from plaintiff. On 25 September 1961, defendant filed his lien against the property. Subsequently, judgment was rendered in favor of defendant's lien and the property was sold to satisfy the judgment. On these facts the court enunciated the following criteria for determining when the materials were last furnished for purposes of filing a materialman's lien:

(i) the work performed and materials furnished must be required by the contract

(ii) in order that the date of the last item be taken as that from which limitation for filing notice of lien shall run, it is essential that the work or materials at different times be furnished under one continuous contract

(iii) whatever is done must be done in good faith for the purpose of fully performing the obligations of the contract, and not for the mere purpose of extending the time for filing lien proceedings and, finally

(iv) where the time allowed for filing has begun to run, the claimant cannot thereafter extend the time within which the lien may be filed by doing or furnishing small additional items for that purpose.

*Id.* at 657, 129 S.E.2d at 260.

In the present case the trial court found, and the evidence supports, that the exhaust fan and intercom system were in furtherance of the original contract and, hence, that they were required by the contract and the contract could not be considered completed until such items were provided. Moreover, unlike *Priddy*, in the present case there is no indication that the work done on 3 February 1988 was done for the purpose of extending the time for filing the lien. In our opinion, the findings of the trial court

meet the criteria of *Priddy* and support the conclusion that the work was done in furtherance of the original contract.

When the action to enforce the lien is filed within 180 days after the last furnishing of services, G.S. 44A-13 provides that the judgment enforcing the lien shall direct that the property subject to the lien be sold to satisfy the amount due. G.S. 44A-13(b). Therefore, this conclusion was proper.

Finally, defendant assigns error to the court ordering that the judgment should attach as a lien on the property and the property should be sold to satisfy the judgment. As discussed above, a judicial sale is the statutorily prescribed procedure whereby the lien creditor can collect the judgment.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

Judges EAGLES and ORR concur.