RAMEY KEMP & ASSOCIATES, INC., Plaintiff-Appellee
v.
RICHMOND HILLS RESIDENTIAL PARTNERS, LLC; FIRST BANK and FIRST TROY SPE, LLC, Defendants-Appellants and Third Party Plaintiffs
v.
STEVE SAIEED, Third-Party Defendant

No. COA12-121

Filed 5 February 2013

**1. Liens—filing claim of lien—last furnished labor or materials—no genuine issue of material fact**

The trial court did not erroneously grant summary judgment in favor of Plaintiff on its claim of lien. Plaintiff offered evidence that it had filed its claim of lien well within the statutorily-specified 120 days of the date upon which it last furnished labor or materials under the relevant contract and Defendants failed to adduce admissible evidence demonstrating the existence of a genuine

issue of material fact concerning the date upon which Plaintiff last provided services.

**2. Liens—claim of lien—contract—making of an improvement to land**

The trial court did not err by granting summary judgment in favor of Plaintiff on a claim of lien as the work performed by Plaintiff under its contract with defendant Richmond Hill involved the making of an improvement to land.

Judge McGee dissenting.

*Appeal by defendants from order entered 3 October 2011 by Judge R. Allen Baddour, Jr. in Wake County Superior Court. Heard in the Court of Appeals 5 June 2012.*

*Manning Fulton & Skinner, P.A., by William C. Smith, Jr. and Natalie M. Rice, for Plaintiff-Appellee.*

*Boxley, Bolton, Garber & Haywood, L.L.P., by Ronald H. Garber, for Defendants-Appellants First Bank and First Troy SPE, LLC.*

ERVIN, Judge.

Defendants First Bank and First Troy, SPE, LLC, appeal from an order granting summary judgment in favor of Plaintiff Ramey Kemp & Associates, Inc., with respect to its breach of contract, *quantum meruit*, and lien enforcement claims. On appeal, Defendants contend that the trial court erred by entering summary judgment in Plaintiff's favor on the grounds that Plaintiff failed to file a claim of lien within 120 days of the date upon which it last furnished labor or materials under the relevant contract and that the work that Plaintiff performed lacked the necessary nexus to an improvement to real property. After careful consideration of Defendants' challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Background

### A. Substantive Facts

On 10 August 2005, Plaintiff entered into a "contract at the request of Steve Saieed, [an] authorized representative of Richmond Hills Residential Partners, LLC," under which Plaintiff was obligated to furnish "labor, materials and equipment necessary to complete pro-

fessional design services in regards to traffic engineering services," including, but "not limited to, preparing design plans, pavement marking and signing plans, drainage, sedimentation and erosion control designs, driveway designs, signal designs and encroachment agreement[s]" for a project under development by Richmond Hills. The services that Plaintiff performed "were not piecemeal and subject to separate contracts or work orders, but constituted a single Contract, and all work was identified by the same Ramey Kemp Project Number (05128.0)."[1]

Pursuant to the terms of this contract, Plaintiff performed various services which were primarily intended to assist Richmond Hills in obtaining the necessary driveway permits for the proposed development. "[T]he project stopped when the economy fell apart," an event which had occurred by January, 2009. On 16 January 2009, the North Carolina Department of Transportation voided the permits authorizing the construction of one of the driveways providing access to the development due to the low level of construction activity occurring at that location. Plaintiff was "paid on this project up until January 28, [2009.]" However, Plaintiff "continued to do work from then through February of 2010" despite the fact that it did not receive payment for these additional services. "The last work performed by Plaintiff on the property was at the specific request of Steve Saieed on behalf of Richmond Hills" in February 2010 and included a "status report on outstanding or unresolved issues such as roadway improvements, driveway permits, and control-of-access agreements to facilitate a sale of the property." In other words, Mr. Saieed had requested that the February 2010 letter be prepared because another person or entity was interested in purchasing the property and because such a letter was needed for the purpose of marketing the property that Richmond Hills had intended to develop.

As part of the process of funding the development of the proposed project, Richmond Hills obtained a loan from First Bank in the amount of $7,750,000.00. In return, Richmond Hills executed a deed of trust applicable to the property on which the development was to be located in favor of First Bank for the purpose of securing the loan.

---

1. Although our dissenting colleague questions our recitation of information contained in an affidavit filed by one of Plaintiff's officers in this statement of the facts on the grounds that the extent to which the present case involves two contracts, rather than a single contract, is disputed, we do not, for the reasons set forth in more detail below, believe that the number of contracts at issue in this case is, in fact, in genuine dispute given the uncontradicted record evidence.

After Richmond Hills defaulted on its obligation to First Bank, First Bank purchased the property at a foreclosure sale on 26 February 2010. On 26 June 2010, First Bank conveyed the property to Defendant First Troy.

## B.  Procedural History

On 30 March 2010, Plaintiff filed a claim of lien against the Richmond Hills property in which it asserted that it had last provided labor or materials for the proposed project on 24 February 2010. On 19 August 2010, Plaintiff filed a verified complaint against Richmond Hills, First Bank, and First Troy in which it asserted claims for breach of contract, *quantum meruit*, and enforcement of its lien claim. On 14 December 2010, First Bank and First Troy filed an unverified answer in which they denied the material allegations of Plaintiff's complaint. In addition, First Bank and First Troy asserted a third-party complaint against Mr. Saieed in which they (1) alleged that Mr. Saieed had filed an affidavit in which he falsely represented that there were no outstanding debts that might give rise to a claim of lien on the property; (2) sought indemnification for any judgment that Plaintiff might obtain against them arising from Plaintiff's claim of lien; and (3) asserted that they were entitled to recover damages from Mr. Saieed pursuant to N.C. Gen. Stat. § 75-1.1.

On 25 May 2011, an entry of default was made against Richmond Hills. On the same date, Plaintiff filed a motion seeking the entry of summary judgment in its favor against First Bank and First Troy and the entry of a default judgment against Richmond Hills. An affidavit executed by Montell Irvin, the president of Ramey Kemp, and various invoices and other documents were attached to Plaintiff's motion. On 25 August 2011, Defendants filed a response to Plaintiff's motion, which was accompanied by Mr. Irvin's deposition and various documentary exhibits, including a 27 January 2009 letter from the North Carolina Department of Transportation voiding the "approved driveway permit application package" due to inactivity. On 3 October 2011, the trial court entered an order granting Plaintiff's motion for summary judgment and entering default judgment against Richmond Hills. First Bank and First Troy noted an appeal to this Court from the trial court's order granting summary judgment in Plaintiff's favor.[2]

2. As a result of the fact that the record on appeal failed to establish that Defendants' third party complaint against Mr. Saieed had been resolved, this Court filed an unpublished opinion on 18 September 2012 dismissing Defendants' appeal as having

## II. Legal Analysis

### A. Standard of Review

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citing *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972). "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations omitted). "[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810, *cert. denied*, 534 U.S. 950, 122 S. Ct. 345, 151 L. Ed. 2d 261 (2001). A trial court's decision to grant summary judgment is reviewed on a *de novo* basis. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

According to N.C. Gen. Stat. § 1A-1, Rule 56(e), "[s]upporting and opposing affidavits [proffered in connection with a summary judgment motion] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." Put another way:

---

been taken from an unappealable interlocutory order. *Ramey Kemp & Assocs. v. Richmond Hills Residential Partners, LLC*, ___ N.C. App ___, 731 S.E.2d 863 (2012) (2012 N.C. App. LEXIS 1109). On 27 September 2012, Defendants filed a petition for the issuance of a writ of *certiorari* and a motion seeking leave to amend the record so as to include a copy of an order entering default judgment against Mr. Saieed. On 4 October 2012, we entered orders allowing Defendants' amendment motion, withdrawing our previous opinion, instructing the Clerk of this Court not to certify that opinion, and denying Defendants' *certiorari* petition as moot. *Ramey Kemp & Assocs. v. Richmond Hills*, ___ N.C. App ___, ___ S.E.2d ___ (2012 N.C. App. LEXIS 1150) (unpublished).

> "affidavits or other material offered which set forth facts which would not be admissible in evidence should not be considered when passing on the motion for summary judgment." "Hearsay matters included in affidavits should not be considered by a trial court in entertaining a party's motion for summary judgment. Similarly, a trial court may not consider that portion(s) of an affidavit which is not based on an affiant's personal knowledge."
> . . . "A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein."

*Wein II, LLC v. Porter*, 198 N.C. App. 472, 476-77, 683 S.E.2d 707, 711 (2009) (quoting *Strickland v. Doe*, 156 N.C. App. 292, 295, 577 S.E.2d 124, 128-29, *disc. review denied*, 357 N.C. 169, 581 S.E.2d 447 (2003) (internal citation omitted); *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 776 (1998); and *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972) (citing N.C. Gen. Stat. § 1A-1, Rule 56(e)). As a result, while the trial court was entitled to consider the factual allegations in Plaintiff's verified complaint in ruling on Plaintiff's summary judgment motion, the same is not true of Defendants' responsive pleading, which was not verified.

A careful reading of Defendants' brief indicates that Defendants have not argued that the record disclosed the existence of any genuine issue of material fact. According to well-established North Carolina law:

> Appellate review is limited to those questions "clearly" defined and "presented to the reviewing court" in the parties' briefs, in which "arguments and authorities upon which the parties rely in support of their respective positions" are to be presented. See N.C.R. App. P. 28(a)[.] . . . "It is not the role of the appellate courts . . . to create an appeal for an appellant," nor is it "the duty of the appellate courts to supplement an appellant's brief with legal authority or arguments not contained therein."

*First Charter Bank v. Am. Children's Home*, 203 N.C. App. 574, 580, 692 S.E.2d 457, 463 (2010) (quoting *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005), and *State v. Hill*, 179 N.C.

App. 1, 21, 632 S.E.2d 777, 789 (2006)).[3] As a result, the only issue raised by Defendant's challenge to the trial court's order is the extent to which the trial court properly applied the applicable law to the uncontradicted evidence.

### B.  Date of Last Furnishing of Labor or Materials

[1] As an initial matter, Defendants claim that the trial court erroneously granted summary judgment in favor of Plaintiff because Plaintiff failed to file its claim of lien in a timely manner. Defendants contend that Plaintiff was not entitled to treat the February 2010 letter as the date upon which services were last furnished to Richmond Hills for purposes of evaluating the timeliness of its claim of lien. We do not find Defendants' argument persuasive.

N.C. Gen. Stat. § 44A-12(b) provides that "[c]laims of lien on real property may be filed at any time after the maturity of the obligation secured thereby but not later than 120 days after the last furnishing of labor or materials at the site of the improvement by the person claiming the lien." The undisputed evidence contained in the present record establishes that Plaintiff entered into a contract with Richmond Hills on 10 August 2005. Mr. Irvin testified in his deposition that Plaintiff continued to perform work under that contract until 24 February 2010. More specifically, Mr. Irvin asserted in his affidavit that (1) Plaintiff's "work often spans months or even years in a given development, sometimes with long gaps between service"; (2) the "parties in this case intended that such services would be provided for this development as a single seamless contract"; (3) the "services Ramey Kemp . . . provided to this developer[,] in particular, were not piecemeal and subject to separate contracts or work orders, but con-

---

3. Our dissenting colleague argues, in essence, that there is a genuine issue of material fact concerning the contents of the original agreement between the parties and whether the present record shows the existence of one contract, rather than two. Although a genuine evidentiary dispute between the parties concerning the number of contracts between the various parties would, in fact, suffice to preclude summary judgment in favor of Plaintiff, there is no direct evidence that the February 2010 letter was written pursuant to a separate contract between Plaintiff and Cape Fear Land Managers, LLC, which appears to be a separate business in which Mr. Saieed was also involved, rather than the 2005 contract between Plaintiff and Richmond Hill. Instead, our dissenting colleague appears to take the position that one can infer from the undisputed evidentiary facts that Plaintiff's invoices were issued pursuant to two contracts rather than one. As a result, we do not believe that the argument advanced by our dissenting colleague rests upon a contention that the record discloses the existence of genuine issues concerning disputed evidentiary facts and believe that our colleague's argument rests, instead, upon inferences which our colleague thinks can appropriately be drawn from the undisputed evidentiary facts.

stituted a single [c]ontract," with all work being "identified by the same Ramey Kemp Project Number (05128.0);" and (4) the "last work performed by Plaintiff on the property was at the specific request of Steve Saieed on behalf of Richmond Hills" and "included tasks that would have been contemplated, expected, and required in a project such as this one." We conclude that this evidence, which is not contradicted by any other admissible evidence, clearly establishes that the last date upon which Plaintiff provided labor or materials to the project under its contract with Richmond Hills was 24 February 2010. As a result, given that Plaintiff filed a claim of lien applicable to the property on 30 March 2010, that filing was made well within the statutorily-specified 120 day period.

The presentation of the evidence outlined in the preceding paragraph shifted the burden of production to Defendants to adduce admissible evidence, as compared to mere speculation or conclusory assertions, demonstrating the existence of a genuine issue of material fact concerning the date upon which Plaintiff last provided services relating to the project under its contract with Richmond Hill. Defendants did not adduce such evidence. Instead, Defendants argue that the undisputed evidence establishes that the work upon which Plaintiff relies in support of its assertion that it last furnished work to Richmond Hills on 24 February 2010 resulted from "a separate contract between Ramey and Cape Fear Land Managers LLC" instead of having been performed under the initial contract between Plaintiff and Richmond Hills. After carefully reviewing the record, we conclude that this argument lacks both legal and evidentiary support given the facts disclosed in the present record.

As an initial matter, Mr. Irvin explicitly stated in his affidavit that the report in question was prepared at Mr. Saieed's request under the original contract and that the preparation of such a report was consistent with the scope of the work to be performed by Plaintiff under the original contract. Defendants argue that the February 2010 report, which was prepared in order to facilitate a sale of the property on which the development was supposed to be completed, was prepared after the work contemplated under the original contract between Plaintiff and Richmond Hills had already been completed, with this assertion based on the fact that Richmond Hills had ceased work on the development due to the existence of financial problems prior to 24 February 2010. These arguments ignore Mr. Irvin's testimony con-

RAMEY KEMP & ASSOCS., INC. v. RICHMOND HILLS RESIDENTIAL PARTNERS, LLC

[225 N.C. App. 397 (2013)]

cerning the scope of the work contemplated in the original contract, which would encompass a report of the type at issue here.[4]

In addition, Defendants direct our attention to the fact that the 25 February 2010 invoice was sent to Mr. Saieed c/o Cape Fear Land Managers LLC. However, the uncontradicted evidence contained in the present record indicates that, throughout the contract period, Plaintiff consistently sent invoices for the work performed under its contract with Richmond Hills to Mr. Saieed c/o Cape Fear Land Managers LLC. In other words, the invoice relating to the February 2010 report did not differ from Plaintiff's earlier invoices, precluding us from inferring the existence of a new or "second" contract from the manner in which the invoice was addressed.[5]

Finally, Defendants stress that the work upon which Plaintiff relies to establish a date of last furnishing was performed more than a year after the last prior occasion on which Plaintiff had performed work for Richmond Hill. However, Mr. Irvin stated in his affidavit that

---

4. In reaching a different conclusion, our dissenting colleague emphasizes the existence of evidence tending to show some uncertainty as to whether the parties ever entered into a written contract and the fact that the preparation of a report was not included in the description of the "basic" contours of the work that Plaintiff originally agreed to perform for Richmond Hills. However, the record contains no indication that there was a written agreement that differed in any way from the description of the scope of the contract described by Mr. Irvin or that Mr. Irvin lacked personal knowledge of the scope of the parties' agreement. In addition, nothing in the evidence provided by Mr. Irvin tends to suggest that the overall scope of the work to be performed under the contract was limited to the achievement of the parties' "basic" goals. Finally, the alleged limitations in Mr. Irvin's knowledge to which our dissenting colleague alludes for the purpose of attempting to establish "potential contradict[ions]" in his testimony relate to the administration of the underlying contract rather than to the origin and scope of that agreement. As a result, we do not believe that any of these arguments support reversal of the trial court's order.

5. Our dissenting colleague emphasizes the absence of any mention of Richmond Hills in the address used in the cover letter associated with the invoice relating to the work involved in the preparation of the February 2010 letter and the fact that Cape Fear was shown as the applicant for the requested driveway permit on certain documents sent to the North Carolina Department of Transportation as further support for her contention that the record would support a finding that the February 2010 letter was sent pursuant to a second contract between Plaintiff and Cape Fear. However, given that all of the invoices that Plaintiff sent relating to services provided with respect to the property on which the development was to be constructed were identical; given that the invoice, rather than the cover letter, is the operative document for billing purposes; and given that the record is devoid of any evidence affirmatively tending to show the existence of a second contract between Plaintiff and Cape Fear relating to the February 2010 letter, we do not believe that the additional factors upon which our dissenting colleague relies provide any substantive basis for inferring that there were two, rather than one, contracts relating to the property in question.

Plaintiff's "work often spans months or even years in a given development, sometimes with long gaps between service, given that such projects are often temporarily suspended and delayed by various events." Defendant did not adduce any evidence that contradicted this assertion. As a result, for the reasons set forth above, we conclude that Defendants' "two contract" theory, with which our dissenting colleague agrees, lacks adequate evidentiary support.

In their brief, Defendants place substantial reliance on the Supreme Court's decision in *Priddy v. Lumber Co.*, 258 N.C. 653, 129 S.E.2d 256 (1963). In *Priddy*, the defendant supplied materials required for the construction of a residence. After the completion of the necessary construction work, the defendant twice made unnecessary trivial purchases for the express purpose of extending the period of time within which a claim of lien might lawfully be filed. In holding that these purchases did not suffice to extend the time within which a claim of lien could properly be filed, the Supreme Court stated that:

> "[T]he time for filing a claim in a mechanic's lien proceeding is computed from the date when the last item of work labor or materials is done, performed or furnished[.] . . . But the work performed and materials furnished must be required by the contract, and whatever is done must be done in good faith for the purpose of fully performing the obligations of such contract, and not for the mere purpose of extending the time for filing lien proceedings.". . . Furthermore, . . . the work or materials at different times [must] be furnished under one continuous contract. Where the time allowed for filing a lien has begun to run, the claimant cannot thereafter extend the time within which the lien may be filed by doing or furnishing small additional items for that purpose.

*Priddy*, 258 N.C. at 656-57, 129 S.E.2d at 260 (quoting *Beaman v. Hotel Corp.*, 202 N.C. 418, 422-23, 163 S.E. 117, 119 (1932) (other citations omitted). As a result, *Priddy* "enunciated the following criteria for determining when the materials were last furnished for purposes of filing a materialmens lien:

> (i) the work performed and materials furnished must be required by the contract

> (ii) . . . the work or materials at different times [must] be furnished under one continuous contract

(iii) whatever is done must be done in good faith for the purpose of fully performing the obligations of the contract, and not for the mere purpose of extending the time for filing lien proceedings and, finally

(iv) where the time allowed for filing has begun to run, the claimant cannot thereafter extend the time within which the lien may be filed by doing or furnishing small additional items for that purpose.

*Blalock Electric Co. v. Grassy Creek Development Corp.*, 99 N.C. App. 440, 447, 393 S.E.2d 354, 358 (1990) (citing *Priddy*, 258 N.C. at 657, 129 S.E.2d at 260). In analyzing these factors and determining the manner in which this case should be resolved, we find it useful to compare the facts at issue in *Blalock* with those at issue in *Priddy*.

In *Blalock*, the plaintiff, an electrical contractor, performed a substantial amount of electrical work on two condominiums, for which it was paid. Subsequently, Plaintiff stopped working on the project because "defendant was without funds to proceed with construction." *Blalock*, 99 N.C. App at 442, 393 S.E.2d at 355. Some months later, at the defendant's request, the plaintiff performed additional work on the project. On appeal, the defendant argued, in reliance on *Priddy*, that "the [trial] court erred in finding that the labor and materials supplied by plaintiff . . . were not trivial in nature and were performed in furtherance of the original contractual obligation." *Blalock* at 444, 393 S.E.2d at 356. In rejecting this argument, we held that the record supported a finding that the work was performed under the original contract and that "there [was] no indication that the work . . . was done for the purpose of extending the time for filing the lien." *Blalock* at 447, 393 S.E.2d at 358.

The facts contained in the present record resemble those at issue in *Blalock* more closely than those at issue in *Priddy*. More specifically, Plaintiff's evidentiary showing indicated that Mr. Saieed requested production of a report detailing the status of the driveway permitting process, which had been the principal issue addressed in the earlier work that Plaintiff performed for Richmond Hills. In addition, the undisputed record evidence tends to show that Mr. Saieed had served as Richmond Hill's contact with Plaintiff throughout the history of the project and that the invoice associated with this report had the same project number as all of the earlier invoices that Plaintiff had sent to Richmond Hills stemming from work performed in furtherance of this project. As the Supreme Court noted in

*Beaman,* "[w]here a service is performed or material furnished at the request of the owner, it will extend the time for claiming a lien or will revive an expired lien, as to a contract . . . substantially completed." *Beaman,* 202 N.C. at 422, 129 S.E.2d at 119 (citation omitted). Finally, Defendants adduced no evidence that the report upon which Plaintiff relies stemmed from any sort of collusion or bad faith. As a result, none of Defendants' challenges to the trial court's decision predicated on the timeliness of Plaintiff's lien claim have any merit.

### C. Improvement of Land

**[2]** Secondly, Defendants argue that the trial court erred by granting summary judgment in favor of Plaintiff on the grounds that the report prepared by Plaintiff in February 2010 "did not go toward making an improvement to the land as required by [N.C. Gen. Stat.] § 44A-8." This argument lacks merit.

N.C. Gen. Stat. § 44A-8 provides, in pertinent part, that a lien claim may be filed by "[a]ny person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon." According to Defendants, the report that Plaintiff prepared in February 2010 in connection with the proposed development did not contribute to the making of an improvement on the real property and was, for that reason, insufficient to support the filing of a claim of lien. Defendant's argument overlooks N.C. Gen. Stat. § 44A-7, which provides, in pertinent part, that:

> Unless the context otherwise requires in this Article:
>
> (1) "Improve" means to build, effect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property, or to excavate, clear, grade, fill or landscape any real property, or to construct driveways and private roadways, . . . and shall also mean and include any design or other professional or skilled services furnished by architects, engineers, [or] land surveyors[.] . . .
>
> (2) "Improvement" means all or any part of any building, . . . alteration, demolition, excavation, clearing, grading, filling, or landscaping, including trees and shrubbery, driveways, and private roadways, on real property.

RAMEY KEMP & ASSOCS., INC. v. RICHMOND HILLS RESIDENTIAL PARTNERS, LLC

[225 N.C. App. 397 (2013)]

As we have already noted, Plaintiff contracted with Richmond Hill to "provide all services relating to design, engineering, planning, and permit acquisition for roadways and driveways for development of the real property owned by Richmond Hills[.]" Although Defendants do not deny that the work described in this portion of the contract between Plaintiff and Richmond Hills comes within the statutory definition of an "improvement" to real property, they argue that the specific task that Plaintiff performed on 24 February 2010 did not directly result and was not intended to result in any improvement to the real property upon which Richmond Hill's project was to be developed. In advancing this argument, Defendants rely upon the same "second contract" theory which we have already found to be lacking in merit. As a result, we necessarily reject Defendants' contention that the work performed by Plaintiff under its contract with Richmond Hill did not involve the making of an improvement to land.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court did not err by entering summary judgment in Plaintiff's favor.[6] As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judge STEELMAN concurs.

Judge McGee dissents in separate opinion.

McGEE, Judge, dissenting.

For reasons that follow, I respectfully dissent.

---

6. Our dissenting colleague suggests that there are genuine issues of material fact arising from questions about the credibility of and weight to be given to Mr. Irvin's testimony. However, summary judgment is appropriate, even in favor of a party with the burden of proof, when "there are only latent doubts as to the affiant's credibility," when the non-moving party fails to present any evidentiary materials that create a direct factual conflict, when the non-moving party "fail[s] to point to specific areas of impeachment or contradiction," and when the non-moving party fails to utilize the procedures available pursuant to N.C. Gen. Stat. § 1A-1, Rule 56(f). *Kidd v. Earley*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976). In view of the fact that our dissenting colleague has failed to point out any specific basis for challenging the credibility of or weight to be given to the evidence provided by Mr. Irvin other than the limitations upon the extent of Mr. Irvin's knowledge and given that these limitation do not, for the reasons set forth earlier, provide any basis for questioning his knowledge of the scope of the work required under the 2005 contract, we do not believe that summary judgment should have been denied based on weight and credibility considerations.

RAMEY KEMP & ASSOCS., INC. v. RICHMOND HILLS RESIDENTIAL PARTNERS, LLC

[225 N.C. App. 397 (2013)]

## I. Additional Facts.

Plaintiff continued to provide services to Richmond Hills until February 2009, when development was halted due to economic difficulties. Richmond Hills defaulted on its First Bank loan. In February 2010, in anticipation of a foreclosure sale, Mr. Saieed requested that Plaintiff write a letter detailing the work completed by Plaintiff and the status of permits that had been obtained for the property. Plaintiff complied, sending Mr. Saieed a letter dated 22 February 2010 that contained the information sought. The property was sold 26 February 2010 at foreclosure to First Bank for $4,000,000.00.

Concerning the work done by Plaintiff, Mr. Irvin testified in his deposition as follows:

Q: On the Richmond Hills project, what was Ramey Kemp supposed to do on this project?

A: Obtain driveway permitting approval. I mean, that's the primary goal to get the driveway permits and approvals so the development can proceed. Without the access, they can't develop the property.

Q: So that was the basic project and everything else was a subset under it?

A: That's the basic part of the project. I mean, and everything goes into that: Coordination with the NCDOT and the County; dealing with traffic engineering studies; the roadway design plans; control of access approval; and general coordination through the whole process and then we did not get to the point of construction administration but we would likely have continued on and done that.

Q: And why was the stage of construction management not reached?

A: To my knowledge, you know, the project stopped when the economy fell apart.

Q: Yeah. When was that?

A: I would say I couldn't put a definitive date on it or anything but I would say '09, somewhere in '09 but we continued to work on Mr. Saieed's behalf during that time and up through now.

Q: What have you done on the project recently?

A: Other than all of this stuff? Nothing that relates—I think the last thing we did was an update for Mr. Saieed to let him know where everything stood permitting-wise. He indicated to us that he had a buyer and needed an update of the permits and status of the approvals and what were the next steps going forward. I think he—I don't remember the exact date of that but it was not too long ago; and I think again back in 2010, he asked for the same thing.

Plaintiff's invoices show that the last work done by Plaintiff before "the project stopped when the economy fell apart" was on 11 February 2009. The work Plaintiff completed "for Mr. Saieed to let him know where everything stood permitting-wise" was between 3 February 2010 and 24 February 2010. The dispositive question is whether the last work performed by Plaintiff pursuant to the 2005 contract was completed in February 2009, or February 2010.

I note that the majority states as fact, in its "Substantive Facts" section, definitive statements from Plaintiff's complaint and affidavits concerning the contested issues on appeal. For example, the majority, quoting Mr. Irvin's affidavit, states as fact: "The services that '[Plaintiff] performed were not piecemeal and subject to separate contracts or work orders, but constituted a single Contract[.]' " If, as the majority states, this is a "fact," then our analysis is over. However, whether there was only evidence of a single contract, or evidence of two separate contracts, is the issue currently before us.

## II. Analysis.

In ruling on a motion for summary judgment, "the court may consider the pleadings, depositions, admissions, affidavits, answers to interrogatories, oral testimony and documentary materials." All such evidence must be considered in a light *most favorable to the non-moving party*. On appeal, an order allowing summary judgment is reviewed *de novo*.

*Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 469, 597 S.E.2d 674, 692 (2004) (citations omitted) (emphasis added).

Plaintiff, in its complaint, asserted it entered into a contract with Richmond Hills in 2005 that provided that Plaintiff would furnish

"labor, materials and equipment necessary to complete professional design services in regards to traffic engineering services which includes, but is not limited to, preparing design plans, pavement marking and signing plans, drainage, sedimentation and erosion control designs, driveway designs, signal designs and encroachment agreement for [Defendant's] property."

In their answer, Defendants denied Plaintiff's assertion regarding the provisions of the contract. It is true that Defendants' answer is unverified and cannot be treated as an affidavit. It is also true that: "In opposing a motion for summary judgment, the non-moving party 'may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.' N.C.R. Civ. P. 56(e)." *Dixon v. Hill*, 174 N.C. App. 252, 261-62, 620 S.E.2d 715, 721 (2005). The majority states: "Defendants have not argued that the record disclosed the existence of any genuine issue of material fact." However, Defendants argue on appeal, based upon their deposition questioning of Mr. Irvin, that the work contemplated by the 2005 contract was completed by 2009, and that a new contract was entered into between Plaintiff and a different entity more than a year later. Plaintiff argues that there was only one contract, and that the report produced by Plaintiff in 2010 was contemplated by the 2005 contract. These are issues of material fact, and the evidence is not uncontroverted.

Plaintiff, and the majority, rely heavily on Mr. Irvin's affidavit. However, Mr. Irvin also gave testimony by deposition. Defendants' counsel deposed Mr. Irvin on 12 August 2011, and during that deposition, Mr. Irvin was asked about his personal role in the Richmond Hills project. Mr. Irvin replied that it was: "Fairly limited. I would have been involved up front with oversight of the transportation studies; coordinating with our staff to make sure the project is getting done; you know, any issues would be brought to my attention to resolve and guide the project." During Mr. Irvin's deposition, the following exchange occurred:

Q:  Is there a contract in this case?

A [Mr. Irvin]: Verbal contract. I have not personally seen a hard copy contract but it's quite common for us to proceed with clients that we have worked with in the past to get going on a project and they tell us to go to

work and we go to work and there is an understanding that it's going to take a certain amount of effort and we begin work and start billing and they start paying and that's the contract.

Q: Did you act on behalf of Ramey Kemp in the formation of whatever contract there is in this case?

A: I don't understand.

Q: Did you represent Ramey Kemp and speak for Ramey Kemp in terms of making any contract there is in this case?

A: I don't recall. I don't recall. It was back in 2005 when we got started. I could easily have been the person who coordinated that with Steve Saieed on the phone or via email. I just don't remember.

Q: Do you know whether Steve Saieed was the person who would have been the person acting on behalf of Richmond Hills on this project?

A: Yes.

Q: You said you did not know or think that there was a hard contract; do you mean a written contract by that?

A: Written, right. There may be but I haven't seen it. But if I can expand?

Mr. Smith: Sure.

A: Even if there was, I mean, there was a lot of effort that would have gone beyond what would have been written in 2005 as the beginning of a contract with Mr. Saieed. On projects similar to this, we quite often begin a project like this with a traffic engineering study or traffic impact study and a proposal is given when asked for a proposal and we spell out a scope of work and an estimated fee.

Quite often, it's hourly plus expenses and we begin work and if services beyond the written scope are required, we spell out in our proposal that we will continue working on an hourly basis and that's quite often what we do and then as the traffic engineering study is completed

and negotiations with NCDOT are completed, we begin roadway design plans and more often than not, we move straight into the design with the same understanding.

N.C. Gen. Stat. § 1A-1, Rule 56(c) states that summary judgment may be rendered only if "the pleadings, *depositions*, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011) (emphasis added).

Based on Defendants' deposition of Mr. Irvin, it is unclear whether there was a written contract in the present case and what terms were included in that written contract or any verbal contract. Mr. Irvin's testimony was that he did not know whether a written contract existed, and that he did not remember if he was involved in the negotiation and execution of whatever contract was entered into in 2005. Mr. Irvin's affidavit assertion that the work done to produce the February 2010 letter "included tasks that would have been contemplated, expected, and required in a project such as this one" does not actually state that these tasks were contemplated in the 2005 contract at issue. Mr. Irvin's deposition raises questions concerning Mr. Irvin's actual knowledge surrounding that 2005 contract, and constitutes evidence potentially contradicting Mr. Irvin's self-serving definitive statements that there was only one contract and that the last work done by Plaintiff was pursuant to that single contract.

Although Mr. Irvin's affidavit presents a statement more favorable to Plaintiff on this issue, Mr. Irvin's uncertainty concerning even the manner in which the contract was entered, or the form it took, raises a question of fact on this issue. This is particularly evident when we, as we must, consider all evidence "in a light most favorable to the non-moving party." *Howerton*, 358 N.C. at 469, 597 S.E.2d at 692; *see also Van Reypen Assocs. v. Teeter*, 175 N.C. App. 535, 539, 624 S.E.2d 401, 404 (2006) ("A moving party has the burden of establishing the lack of any triable issue of fact, and its supporting materials are carefully scrutinized, with all inferences resolved against it.") (Citations and quotation marks omitted). I also believe Mr. Irvin's deposition testimony raised questions of weight and credibility. "If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied[.]" *Kessing v. Mortgage Corp.*, 278 N.C. 523, 535, 180 S.E.2d 823, 830 (1971) (citation omitted).

RAMEY KEMP & ASSOCS., INC. v. RICHMOND HILLS RESIDENTIAL PARTNERS, LLC

[225 N.C. App. 397 (2013)]

The majority states that "the February 2010 report was sent to Mr. Saieed c/o Cape Fear Land Managers, LLC[,]" and that "the uncontradicted [record] evidence . . . indicates that, throughout the contract period, Plaintiff consistently sent invoices for the work performed under its contract with Richmond Hills to Mr. Saieed c/o Cape Fear Land Managers, LLC." In fact, the invoices for the work Defendants agree was performed under the 2005 contract were sent to:

> Steve Saieed
> Richmond Hills Residential Partners LLC
> c/o Cape Fear Land Managers LLC
> 3317 Masonboro Loop Road, Suite 150
> Wilmington, NC 28409

The contested February 2010 letter and report were sent to:

> Steve Saieed
> Cape Fear Land Managers LLC
> 3317 Masonboro Loop Road, Suite 150
> Wilmington, NC 28409

Though the earlier invoices and the February 2010 report were all sent to Steve Saieed, it would appear the invoices were sent to Richmond Hills—the c/o indicating Richmond Hills was taking mail at Cape Fear's address—while the February 2010 report was sent to Cape Fear as an entity. On Plaintiff's Claim of Lien, filed 30 March 2010, Plaintiff stated:

> Name and address of the entity with whom the [Plaintiff] contracted for the furnishing of labor and materials:
>
> Richmond Hills Residential Partners, LLC
> Stephen D. Saieed, its Registered Agent.

Plaintiff acknowledges that the 2005 contract was between Plaintiff and Richmond Hills, with Stephen Saieed acting as agent. If the agreement to produce the February 2010 letter was between Plaintiff and Cape Fear, with Stephen Saieed acting as agent, then a second, independent contract is implied, and a question of fact—namely the existence of a second contract—is raised by the evidence. This constitutes admissible evidence contradicting Mr. Irvin's statement that the "last work performed by Plaintiff on the property was at the specific request of Steve Saieed *on behalf of Richmond Hills*." (Emphasis added.).

I note that though Plaintiff's evidence is limited to assertions that the sole contract was between it and Richmond Hills, there is record evidence that the 2005 contract was being performed, at least in part, by Cape Fear. Cape Fear applied for permits for the project, for example. Additional facts concerning the relationship between Richmond Hills and Cape Fear may inform the proper outcome in this matter. The record before us, like the material that was before the trial court, is insufficient to make that determination.

Mr. Irvin, in his affidavit, states that the "last work performed by Plaintiff on the property was at the specific request of Steve Saieed on behalf of Richmond Hills." The fact that Plaintiff's own February 2010 letter, constituting its last work on the project, was addressed to Steve Saieed, Cape Fear Land Managers LLC, when prior record invoices were addressed to Steve Saieed, Richmond Hills Residential Partners LLC, is some record evidence contradicting Mr. Irvin's affidavit statement. I believe that a question of material fact was raised by the "pleadings, depositions, admissions, affidavits, answers to interrogatories, oral testimony and documentary materials" such that summary judgment was improper. *Howerton*, 358 N.C. at 469, 597 S.E.2d at 692.

Because the terms of the contract are central to determining whether the November 2010 letter was a contemplated service under the 2005 contract, or was the product of a second contract and, therefore, whether Plaintiff's right to file a claim of lien against Defendants' property was preserved, the dispute as to the terms of the contract also raises a genuine issue of material fact and precludes summary judgment. *See Schenkel & Shultz, Inc. v. Hermon F. Fox & Associates, P.C.*, 362 N.C. 269, 658 S.E.2d 918 (2008) (summary judgment improper when contested terms of contract raised genuine issue of material fact).

I would reverse the trial court's grant of summary judgment and remand for further proceedings. I am making no comment concerning whether Plaintiff should ultimately prevail and be reimbursed for the work it completed for Richmond Hills (or, perhaps, for Cape Fear). However, because issues of material fact exist, summary judgment at this stage was improper.